**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| THUY DOAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: |
| v. ) | |
| ) | |
| BOARD OF SUPERVISORS OF LOUISIANA ) | Judge _____ |
| STATE UNIVERSITY, LARRY HOLLIER, ) | |
| HENRY GREMILLION, SANDRA ANDRIEU, ) | |
| DOES 1-10, ABC INSURANCE COMPANIES 1- ) | |
| 10, ) | Magistrate _____ |
| ) | |
| Defendants. ) | |
| ) | |

**<u>COMPLAINT</u>**

COMES NOW Plaintiff Thuy Doan, by and through undersigned counsel, to file this Complaint

against the Defendants. In support, they state the following:

**I.     <u>INTRODUCTION</u>**

1.   Plaintiff Thuy Doan was a student of dentistry at Louisiana State University from 2015 to 2017.

2.   Ms. Doan, the daughter of Vietnamese refugees, was two years from graduating and joining her

brother as the first members of their family with a professional degree.

3.   Through her tenure at the University, Ms. Doan coped with mental health issues. She sought

professional care for her depression, anxiety, and insomnia, but still had needs associated with her health

(including medication) that affected her ability to attend early morning classes and quizzes.

4.   On February 8, 2017, Ms. Doan met with Dr. Andrieu to discuss her mental health issues. Ms.

Doan expressed the need for help, but Dr. Andrieu declined to provide any accommodations the school

could make for her.

5.   February 2017 was a particularly tough month for Ms. Doan. In an effort to help her, Ms. Doan's

friend Jennifer Thien and Gina Nguyen took two quizzes for her on February 8 and 15, 2017.

6.  Together, these quizzes represented less than 3% of Ms. Doan's grade in that class.

7.  On February 18, 2017, Ms. Doan, Ms. Thien, and Ms. Nguyen were informed that their presence was required at a meeting with the Academic Performance Advancement Committee (APAC), a body that handles issues of professional conduct.

8.  On February 20, 2017, the three women were interrogated by the APAC, without having been fully apprised of the charges against them, their due process rights in this situation, or the potential consequences of the situation.

9.  On that same day, APAC convened and passed a motion to dismiss Ms. Doan and her two friends from the LSU School of Dentistry, effective immediately.

10. This was a bizarre outcome, considering that the APAC is not the body that handles issues of academic honesty – that is the purview of the Student Affairs Committee. Also, before punishing a student, the APAC must "establish remedial criteria" that would allow the student to avoid the punishment, something Ms. Doan was not offered.

11. On March 9, 2017, Ms. Doan received her letter of expulsion from Dr. Henry Gremillion, and turned in a notice of appeal the next day.

12. On March 15, 2017, Ms. Doan had her appeal meeting. Later that day, Ms. Doan, Ms. Thien, and Ms. Nguyen were emailed that they were expelled.

13. Throughout, Defendants failed to provide Ms. Doan with the requirements of due process. She was not given adequate notice of the charge against her, nor the opportunity to see the evidence against her and give an effective response. Furthermore, the punishment was grossly disproportionate to the offense – especially considering that other students in similar situations have simply been given zeros on tests, or been allowed to temporarily withdraw from school.

14. Students have a protected interest in their education that must be safeguarded prior to expulsion. *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir. 1961). Before expelling a student for

disciplinary reasons, the student must have adequate notice of the charges against her (including the grounds justifying expulsion), the evidence against her, and an opportunity to present her side. *Willis v. Texas Tech Univ. Health Scis. Ctr.*, 394 F. App'x 86, 87 (5th Cir. 2010).

15. The Louisiana Administrative Procedures Act governs how qualifying administrative entities can adjudicate decisions with adequate process, and provides for judicial review of a final decision or order. La. Stat. Ann. § 49:964. LAPA requires notice to the party affected by the administrative adjudication, and the entity must base its finding on evidence that falls within the scope of the notice presented. *In re Dixon*, 2006-0950 (La. App. 1 Cir. 3/28/07), 960 So. 2d 941, 945. Additionally, LAPA provides a guard against agency decisions that are arbitrary and capricious, and allows for judicial remedy when the administrative appeal process is exhausted. *Cranford v. Louisiana State Bd. of Practical Nurse Examiners*, 2008-0209 (La. App. 4 Cir. 10/1/08), 996 So. 2d 590, 602. La. Stat. Ann. § 49:964.

16. A university must accommodate a student with a qualified disability unless to do so would fundamentally alter their educational program or academic requirements. 28 C.F.R. § 35.130(b)(7). A claim for failure to accommodate under the ADA has the following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir.2013).

17. Defendants violated Ms. Doan's due process rights when they expelled her. Further, their inadequate process violated the Louisiana Administrative Procedures Act, and their decision is subject to review under the Act. Finally, their failure to accommodate Ms. Doan's mental health disabilities violated the Americans with Disabilities Act.

18. This is a civil action for injunctive, monetary, and other relief for the violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, Article I, Section 2 of the Louisiana Constitution, *etc*.

## II.    JURISDICTION AND VENUE

19. Plaintiff's claim arises under the Constitution and the laws of the United States. This Court has jurisdiction over Plaintiff's claims of federal rights violations, enforceable under the Fourteenth Amendment, 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has jurisdiction over Plaintiff's Louisiana Administrative Procedures Act claim and other state claims in accordance with 28 U.S.C. § 1367.

20. The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claim occurred in Orleans Parish, Louisiana situated in the Eastern District of Louisiana.

## III.    THE PARTIES

*Plaintiff*

21. Plaintiff **Thuy Doan** is of suitable age and capacity to file this suit. At all relevant time during this suit, Plaintiff was a resident of Orleans Parish in the Eastern District of Louisiana.

*Defendants*

22. Defendant **Board of Supervisors of Louisiana State University** is a public entity and is a final policymaker. Louisiana Revised Statutes Section 17:3215 lists "institutions under the supervision and management" of the LSU board. La. Rev. Stat. § 17:3215 (2011). These include "Louisiana State University Health Sciences Center at New Orleans, which shall include medical and related health schools and programs located in New Orleans." *Id.; see also* La. Rev. Stat. § 17:1519.5 (2010) ("The [LSU B]oard as a body corporate shall have authority to exercise all power to direct, control, supervise, and manage [LSU Health]."). Because LSU Health is an institution of postsecondary education under the control of the LSU Board, the Board is the proper defendant in a suit alleging misconduct by LSU Health. *See* La. Rev. Stat. § 17:3351(A)(1) (2015) (granting the LSU Board authority to "sue and be sued" on behalf of "institutions of postsecondary education under its control").

23. Defendant **Larry Hollier** has served as Chancellor of LSU Health Sciences Center New Orleans

since November 14, 2005. He is sued in his individual and official capacity.

24. Defendant **Henry Gremillion** is the Dean of the LSU School of Dentistry. He is sued in his individual and official capacity.

25. Defendant **Sandra Andrieu** is the Associate Dean of Academic Affairs. She is sued in her individual and official capacities.

26. Defendants **Does 1 to 10** are as-yet unknown individuals or entities involved in the unlawful expulsion of and failure to accommodate Thuy Doan. They are sued in their official and individual capacities.

27. Defendants **ABC Insurance Companies 1-10** are as yet unknown insurance companies, who, upon information and belief, have issued and currently have in effect one or more policies of insurance covering one or more of the Defendants named herein.

## IV.    FACTS

28. Plaintiff realleges and incorporates each and every foregoing paragraph.

29. In the year 2015, Thuy Doan enrolled in the School of Dentistry at Louisiana State University. The daughter of Vietnamese refugees, she was the second member of her family to attend higher education.

30. While she was deeply invested in her studies, she suffered from mental health difficulties unrelated to school.

31. On November 15, 2016, Ms. Doan saw Dr. Vu Mai for depression, anxiety, ADHD, and insomnia. She continued to be seen by this doctor for her health issues. Despite being treated, she needed additional accommodation to effectively perform her academic studies.

32. On January 27, 2017, Ms. Doan missed her Assessing Primary Language class because of her health issues.

33. On February 8, 2017, Ms. Doan missed APL again. Her professor, Dr. Dimattia, emailed her in

concern. Ms. Doan admitted that she was embarrassed to appear in class due to her health issues. Ms. Doan told her professor that she had been struggling and that she had been seeing a doctor for it, but not all issues were resolved.

34. Dr. Dimattia encouraged Ms. Doan to seek help from LSU. Together, they made an appointment for Ms. Doan with Dr. Andrieu, the associate dean of academic affairs and curriculum.

35. On February 8, 2017, Ms. Doan had a one-on-one meeting with Dr. Andrieu. Ms. Doan said she needed help and that she was okay with seeking help, but was having trouble making it to early morning classes.

36. Despite being apprised of Ms. Doan's health needs, Defendants did not help Ms. Doan with accommodations.

37. Ms. Doan was still suffering from insomnia, anxiety, and depression. Since her sleeping medication was ineffective, her doctor prescribed a stronger medication. This caused her to sleep through and miss a quiz.

38. Ms. Doan's friends, Jennifer Thien and Gina Nguyen, became concerned with their friend's well-being. In an effort to help, they took two quizzes for Ms. Doan.

39. Together, these quizzes were worth less than 3% of Ms. Doan's overall grade in her class.

40. On February 15, 2017, two of Ms. Doan's friends were overheard discussing how the quizzes had been taken for Ms. Doan.

41. On February 16, 2017, Ms. Thien, Ms. Ngueyen, and another student were called down and interrogated by two school administrators.

42. At that point, Defendants elected to pursue sanctions against Ms. Doan, Ms. Thien, and Ms. Nguyen (all of whom were Vietnamese women and were expelled at the end of this process).

43. According to Defendants procedures, the Student Affairs Committee is the body that handles academic honesty, and is partly comprised of student representatives. Rather than the Student Affairs

Committee reviewing the incident, the process was adjudicated by the Academic Performance Advancement Committee (APAC). The APAC is charged with resolving allegations of unprofessionalism, not academic honesty. As part of the APAC's procedures, students facing discipline by the APAC must be given "remedial measures" prior to discipline. Ms. Doan was not offered any remedial measures.

44. On February 17, 2017, Ms. Doan, Ms. Thien, and Ms. Nguyen received an email stating that their presence was required for a meeting with APAC that coming Monday. This failed to comply with the requirement in the 2016-2017 Student Handbook that a student must be given five school day's notice before a hearing.

45. This email failed to provide adequate notice of the charges against Ms. Doan, nor did it provide the evidence that was to be used against her.

46. On February 20, 2017, each woman was interrogated by APAC individually. Ms. Doan was not advised of her due process rights under the 2016-2017 Student Handbook, which provided for: the right to refuse to answer questions, to have up to five non-participating observers at her hearing, to be accompanied by a representative to advise, assist, and provide legal counsel at the hearing, to have a reasonable number of witnesses, and the right to personally cross-examine witnesses.

47. The Student Handbook provides sanctioning guidelines for academic dishonesty that include suspension for one to three weeks, retaking course work, performing community service, or participating in appropriate Campus Assistance Programs. Expulsion is not contemplated.

48. APAC passed a resolution to expel Ms. Doan, Ms. Thien, and Ms. Nguyen.

49. Dr. Henry Gremillion supported and upheld the recommendation.

50. On March 9, 2017, Ms. Doan received notice that she was expelled, effective immediately.

51. During the pendency of the appeal, Ms. Doan – whose health difficulties were exacerbated by the stress of this process – thought that she was not allowed on campus. Therefore, she did not go to her

clinics.

52. However, in an attempt to keep her professors informed, Ms. Doan emailed a clinical professor saying she was sick and that was why she was not attending classes. It was at this point that Dr. Sandra Andrieu emailed Ms. Doan saying that she was expected to attend all classes during the appeal.

53. On March 10, 2017, Ms. Doan and her friends turned in notices of appeal to Dr. Gremillion. In a letter to Mr. Gremillion, she requested medical leave for her mental health instead of expulsion.

54. On March 13, 2017, the letter of expulsion dated March 9 was mailed. Ms. Doan met with Dean Cheramie and together they made an appointment with the Campus Assistance Program.

55. On March 14, 2017, Ms. Doan met with Lauren Garnier, a Campus Assistance Program counselor, to get mental health assistance.

56. On March 15, 2017, Ms. Doan had her appeal hearing. On the way home that day, Ms. Doan, Ms. Nguyen, and Ms. Thien were informed by email that their appeal was denied and she was expelled.

57. Other students have engaged in comparable behavior without being expelled. A student named Rustin was turned in for cheating twice – and received a zero on both exams. He also engaged in other disruptive behavior, including getting arrested, and was allowed to take medical leave for mental health. Another student who deleted appointments made by patients with his classmates was not expelled. Another student committed plagiarism and was not expelled. Another student, engaged in behavior that required disciplinary action – but instead of being sent to APAC, he met with Dr. Andrieu and another school official to withdraw for the year and then retake the year.

58. On March 24, 2017, Ms. Doan's counsel sent a letter to Katherine B. Muslow, General Counsel for LSU-Health Sciences, requesting a meeting to discuss concerns related to the expulsion. He also requested that the expelled women be able to attend their classes on a provisional basis.

59. Ms. Muslow failed to respond to this letter, except to state that Ms. Doan was not allowed to continue attending classes. Ms. Muslow declined to respond to any phone calls.

## V.    CLAIMS FOR RELIEF

### Count One – Violation of Due Process Pursuant to U.S.C. 42 § 1983

60. Plaintiff realleges and incorporates each and every foregoing paragraph.

61. The Fourteenth Amendment Due Process Clause is violated when a student is expelled without adequate notice and an adequate hearing. *Pham v. Univ. of Louisiana at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016). The 5th Circuit has found that students have a protected interest that requires due process prior to expulsion. *See Shaboon v. Duncan*, 252 F.3d 722, 730 (5th Cir. 2001) (assuming, without deciding, that medical resident had protected interest in her position); *Davis v. Mann*, 882 F.2d 967, 973 (5th Cir. 1989) (assuming the existence of a liberty or property interest and holding that dental resident received adequate process under Fourteenth Amendment); *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir. 1961) (holding that there must be some notice and hearing before student expulsion from state college or university because students had interest in their college education).

62. There are two potential paths to expulsion with differing requirements of procedural protection: academic dismissal and disciplinary dismissal. Academic dismissals require expert evaluation less suited to administrative or judicial review, but disciplinary dismissals require some "give-and-take" that allows the student to characterize her behavior and put it in "the proper context." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86, 98 S. Ct. 948, 953, 55 L. Ed. 2d 124 (1978). Due process in the context of disciplinary dismissals requires notice and the opportunity to respond to allegations. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

63. Examples of academic dismissals include repeatedly *failing* exams, while disciplinary dismissals are often related to *cheating* on exams. Compare *Perez v. Texas A & M Univ. at Corpus Christi*, 589 F. App'x 244, 248–49 (5th Cir. 2014) (where a student was expelled for multiple instances of failing important examinations) to *Pham v. Univ. of Louisiana at Monroe*, 194 F. Supp. 3d 534, 545 (W.D. La. 2016) (where a student was expelled for multiple instances of cheating).

64. Regardless of how LSU would characterize the expulsion (which they based on "allegations of unprofessionalism"), Ms. Doan's expulsion was disciplinary in nature. She did not have a failing academic background. Nor did she fail an exam (or even a quiz).

65. Hearings related to disciplinary dismissals require notice. *Pham v. Univ. of Louisiana at Monroe*, 547. Sufficient notice allows the accused to mount an adequate defense. *Id.* The notice must provide the specific charge and the grounds which, should they be proven, justify expulsion. *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir.1961). The student must be given, in addition to notice of the charges, an explanation of the evidence against her, and the opportunity to present her side of the story. *Willis v. Texas Tech Univ. Health Scis. Ctr.,* 394 F. App'x 86, 87 (5th Cir. 2010), *Swindle v. Livingston Parish Sch. Bd.,* 655 F.3d 386, 401-02 (5th Cir. 2011). If explanation of the evidence is not given prior to the hearing, the student must be *at least* able to attend the hearing and question witnesses. *Pham v. Univ. of Louisiana at Monroe*, 545-6.

66.  While a hearing need not be a "full-dress judicial hearing," it must be tailored appropriately to the situation to protect the rights of the accused. *Dixon v. Ala. State Bd. of Ed.*, 157. Due process requires a neutral decision-maker free from bias. *Pham v. Univ. of Louisiana at Monroe*, 544.

67. Defendants did not comport to these procedural requirements. Ms. Doan was not given sufficient notice of the charges against her, nor the opportunity to respond to evidence against her. Significantly, she was also never given a chance to respond to the grounds for expulsion, as expulsion was not a contemplated sanction based on her alleged conduct.

68. Additionally, Defendants did not conform to their own procedural standards when they expelled Ms. Doan. They failed to give her adequate and timely notice, fully advise her of the charges against her and her rights at a hearing, and exercised a sanction not contemplated by their own rules. While failure to follow internal procedures is not inherently unconstitutional, continuous violations of rules violate due process where they shock the conscience or result in fundamentally unfair proceedings. *Pham v.*

*Univ. of Louisiana at Monroe*, 544.

69. Defendants repeatedly broached their own procedure in the expulsion process, which resulted in fundamentally unfair proceedings. This is additionally clear when one considers the severity of the sanction weighted against the conduct: expulsion for cheating on quizzes that amounted to 3% of the grade for one single class.

70. Ms. Doan's hearings were rushed, perfunctory, and constitutionally inadequate.

71. By unlawfully expelling Ms. Doan, Defendants violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As Defendants were acting under the color of state law, Plaintiff's claims are actionable under 42 U.S.C. § 1983.

### Count Two - Violations of the Louisiana Constitution

72. Plaintiff realleges and incorporates each and every foregoing paragraph.

73. Article One, Section Two of the Louisiana Constitution of 1974 guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."

74. By reason of the same conduct that violated Ms. Doan's federal constitutional rights, Defendants violated her state constitutional rights to property and due process.

75. This conduct resulted in Ms. Doan's expulsion and caused the physical, emotional and pecuniary damages as described above and below.

### Count Three - Violation of the Louisiana Administrative Procedures Act

76. Plaintiff realleges and incorporates each and every foregoing paragraph.

77. The Louisiana Administrative Procedures Act establishes procedures for adjudication by state agencies that fall under purview of the statute. Adequate procedure includes: notice that includes the time, place, and nature of the hearing as well as the legal authority under which the hearing is to be held, opportunity for all parties to respond and present evidence, and limiting the findings of fact to evidence and matters officially noticed. La. Stat. Ann. § 49:955. While the agency can determine the specifics of

the process, the affected party must at least have due notice and opportunity to be heard. *In re Dixon*, 2006-0950 (La. App. 1 Cir. 3/28/07), 960 So. 2d 941, 944. Notice includes the possible consequences of the hearing. *Tafaro's Inv. Co. v. Div. of Hous. Imp.*, 261 La. 183, 191–92, 259 So. 2d 57, 60–61 (1972).

78. Decisions cannot be made outside of the scope of evidence presented in the charge. *In re Dixon*, 945. The APA also requires the final decision be written or stated in the record. La. Stat. Ann. § 49:958.

79. The APA provides an opportunity for redress where an agency decision is "in violation of constitutional or statutory provisions" and/or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion," among other reasons. La. Stat. Ann. § 49:964.

80. An administrative decision is arbitrary when the administrative agency had disregarded evidence or given inappropriate weight to evidence; the decision is capricious when the agency's conclusion has no substantial basis or is contrary to substantiated competent evidence. See, *Coliseum Square Ass'n v. City of New Orleans,* 88-1837 (La.1/30/89), 544 So.2d 351, quoted in *Cranford v. Louisiana State Bd. of Practical Nurse Examiners*, 2008-0209 (La. App. 4 Cir. 10/1/08), 996 So. 2d 590, 602.

81. Defendants did not give Ms. Doan adequate notice or adequate opportunity to respond to the allegations and present evidence in her favor. She was also not properly apprised of the potential consequences of the original hearing.

82. Additionally, APAC's decision to expel Ms. Doan was arbitrary and capricious. It gave inappropriate weight to two instances of misconduct that did not call for expulsion under LSU's own rules. APAC's decision to expel Ms. Doan had no substantial basis under the evidence.

83. Defendant's decision to expel Ms. Doan violated the Louisiana Administrative Procedures Act and is subject to review under the Act.

### Count Four – Violation of the Americans with Disabilities Act

84. Plaintiff realleges and incorporates each and every foregoing paragraph.

85. Title II of the Americans with Disabilities Act forbids public institutions from excluding a

student or denying her the opportunity to participate in or benefit from their services on the basis of a disability. 42 U.S.C. § 12132 et seq. A university must accommodate a student with a qualified disability unless to do so would fundamentally alter their educational program or academic requirements. 28 C.F.R. § 35.130(b)(7).

86. A claim for failure to accommodate under the ADA has the following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir.2013).

87. A disability is "a physical or mental impairment that substantially limits one or more major life activities" or "a record of such an impairment" or "being regarded as having such an impairment." 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A). Disabilities include mental health issues. *See Alejandro v. Palm Beach State Coll.*, 843 F. Supp. 2d 1263, 1270 (S.D. Fla. 2011) (Student with posttraumatic stress disorder and major depressive disorder, which impacted her ability to attend classes, qualifies her under statute as disabled).

88. A school need only accommodate a disabled student who is otherwise qualified for the institution. 42 U.S.C. § 12131(2). *Halpern v. Wake Forest Univ. Health Scis.,* 669 F.3d 454, 462 (4th Cir.2012).

89. Ms. Doan has a qualifying disability: she suffers from depression, anxiety, and insomnia. This affects the major life activities of sleeping and, when enrolled in school, studying and attending classes.

90. The school was aware that Ms. Doan had a qualifying disability. She shared this disability and her attempts at care with a professor, who helped her get an appointment with a school care provider.

91. LSU failed to accommodate Ms. Doan, even though she was otherwise qualified for their program. She was not offered accommodation in terms of extra time to hand in assignments or complete quizzes, for example – she was expelled.

92. Defendants violated Ms. Doan's rights under Title II of the Americans with Disabilities Act when they failed to reasonably accommodate her disability, and instead expelled her.

## Count Five – Breach of Contract

93.     Plaintiff realleges and incorporates each and every foregoing paragraph.

94.     Defendants have failed to perform the duties of which they contracted to assume in. La. Civil Code Art. 1994 states that an obligor is liable for the "damages caused by his failure to perform a conventional obligation." La. Civil Code Art. 2769 states that "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

95.     Defendants here failed to provide an educational program in accordance with their own rules and procedures, thus breaching the contract between them and Ms. Doan.

## Count Six – *Respondeat Superior*

96.     Plaintiff realleges and incorporates each and every foregoing paragraph.

97.     While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of Louisiana State University Health Sciences Center, Dr. Henry Gremillion, and Dr. Sandra Andrieu within the scope of their employment.

98.     Defendants Louisiana State University Health Sciences Center, Dr. Henry Gremillion, and Dr. Sandra Andrieu are therefore liable as principals for all torts committed by their agents.

## Count Nine – Indemnification

99.     Plaintiff realleges and incorporates each and every foregoing paragraph.

100.     Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

101.     While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of Louisiana State University Health Sciences Center,

Dr. Henry Gremillion, and Dr. Sandra Andrieu within the scope of their employment.

102.    Louisiana State University Health Sciences Center, Dr. Henry Gremillion, and Dr. Sandra

Andrieu are therefore obligated by Louisiana statute to pay any judgment entered against its employees.

**Count Ten - State Law Direct Action Claim**
**(Against Defendant ABC Insurance Companies 1-10)**

103.    Plaintiff realleges and incorporates each and every foregoing paragraph.

104.    Defendant ABC Insurance Companies 1-10, upon information and belief, have issued

and/or currently have in effect one or more policies of insurance covering one or more of the Defendants

named herein. For valuable consideration received, these policies obligated Defendant ABC Insurance

Companies 1-10, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the

insured Defendant(s) may become obligated to pay to Ms. Doan or to indemnify their insured

Defendant(s) for any sums the insured Defendant(s) may become obligated to pay Ms. Doan.

105.    By reason of their illegal and unconstitutional acts, Defendants are liable to Plaintiff for

all damages and injuries Ms. Doan has suffered as a result. Upon information and belief, Defendant

ABC Insurance Companies 1-10 are contractually obligated to pay these sums on behalf of the insured

Defendant(s).

106.     Upon information and belief, Defendant ABC Insurance Companies are liable to

Plaintiff for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy

limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of

privilege or immunity from liability.

107.    Under Louisiana Revised Statute § 22:655(B), Plaintiff brings a direct action against

Defendant ABC Insurance Companies 1-10 to recover any and all sums they are obligated to pay

Plaintiff on behalf of their insureds or to indemnify their insureds.

**VI.    RELIEF REQUESTED**

108.    Plaintiff requests a trial by jury.

109.    Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

a.  Declaratory relief;

b.  Judgment against Defendants for Plaintiff's asserted causes of action;

c.  Injunctive relief against Defendants to allow Ms. Doan to continue her studies uninterrupted;

d.  Award of compensatory damages;

e.  Award of special damages;

f.  Award costs and attorney's fees pursuant to 42 U.S.C. § 1988, 42 U.S.C.A. § 2000a-3, 42 U.S.C. § 12205, 28 C.F.R. § 35.175, and 29 U.S.C. § 794a(b);

g.  Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted, this the fourteenth day of April, 2017,

THUY DOAN, by and through her counsel,

/s/ William Most_____
WILLIAM MOST
La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com